**DELAWARE COUNTY, Individually and on behalf of all others similarly situated,**

v.

**J.P. MORGAN CHASE & COMPANY, Mellon Financial Corporation, PNC Financial Services Group, Inc., and John Doe Banks Nos. 1 Through 300, et al.,**

v.

**PNC Bank, National Association (sued as PNC Financial Services Group, Inc.),**

v.

**The Commonwealth of Pennsylvania, and The Honorable Barbara Hafer, Treasurer of the Commonwealth of Pennsylvania,**

**Appeal of: PNC Bank, National Association (sued as PNC Financial Services Group, Inc.),**

**First Union Corporation, First Union National Bank, individually and as successors-in-interest to CoreStates Bank, NA, CoreStates Financial Corp., First Pennsylvania Bank, Southeast National Bank of Pennsylvania, Delaware County National Bank, Philadelphia National Bank, Meridian Bank, First Fidelity Bank, NA, and John Doe Banks Nos. 1 through 300, Appellants,**

v.

**Delaware County, Individually and on behalf of all others similarly situated, and The Honorable Barbara Hafer, Treasurer of the Commonwealth of Pennsylvania.**

Commonwealth Court of Pennsylvania.

Argued April 1, 2003.

Decided July 1, 2003.

---

Alan J. Davis, Philadelphia, for Appellant, PNC Bank.

C. Clark Hodgson, Philadelphia, for Appellant, First Union Corporation and First Union National Bank.

Marc L. Ackerman, Bala Cynwyd, Ronald G. Henry, Bryn Mawr, for Appellee, Delaware County.

John F. Smith, Phildelphia, for appellee, Mellon Finance.

Ronald G. Henry, Bryn Mawr, for appellee, Delaware County.

Linda S. Lloyd, Harrisburg, for Appellee, Commonwealth of Pennsylvania.

BEFORE: COLINS, President Judge, McGINLEY, Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, LEADBETTER, Judge, and SIMPSON, Judge.

Opinion by Judge PELLEGRINI.[1]

PNC Bank, National Association (sued as PNC Financial Services Group, Inc.) (PNC) petitions for review of a June 10, 2002 order of the Court of Common Pleas of Delaware County (trial court) denying its motion to transfer to the Commonwealth Court of Pennsylvania the civil ac-

tion brought by Delaware County in an attempt to recover unclaimed bond funds that had been escheated to the Commonwealth. First Union Corporation, First Union National Bank, individually and as successors-in-interest to CoreStates Bank, NA, CoreStates Financial Corp., First Pennsylvania Bank, Southeast National Bank of Pennsylvania, Delaware County National Bank, Philadelphia National Bank, Meridian Bank, First Fidelity Bank, NA, and John Doe Banks Nos. 1 through 300 (collectively, First Union)[2] petitions for review of a June 10, 2002 order of the Court of Common Pleas of Delaware County (trial court) denying its motion to transfer to the Commonwealth Court of Pennsylvania the civil action brought by Delaware County.[3]

The Banks served as sinking fund depositories[4] for bonds issued by Delaware County in 1974, 1992 and 1995.[5] Under Section 8224(f) of the Debt Act, 53 Pa.C.S. § 8224(f),[6] a sinking fund depository is required to return to the governmental unit all funds deposited in the sinking fund for the payment of the bonds unclaimed by

---

**1.** This case was reassigned to the author on June 3, 2003.

**2.** PNC and First Union will be referred to collectively as the Banks.

**3.** Pursuant to Pa. R.A.P. 1311, PNC's and First Union's petitions for review were granted on November 20, 2002, and December 4, 2002, respectively. The petitions were consolidated on December 30, 2002.

**4.** Section 1790 of .the County Code, Act of August 9, 1955, P.L. 323, *as amended*, 16 P.S. § 1790, provides that "[i]n each county there shall be a sinking fund commission, composed of the commissioners, the controller, or auditors in counties not having a controller, and treasurer." Section 1791 of the County Code, 16 P.S. § 1791, provides that the commission shall manage the county's sinking funds, including all the interest and income associated with it.

**5.** Under Section 8221 of the Local Government Unit Debt Act (Debt Act), 53 Pa.C.S. § 8221, governmental units having outstanding bonds are required to maintain sinking funds for the payment of assumed taxes, principal and interest on the bonds.

**6.** 53 Pa.C.S. § 8224(f) provides, in relevant part:

(f) **Return of unclaimed moneys.** The sinking fund depository shall return to the local government unit all moneys deposited in a sinking fund for the payment of bonds, notes or coupons which have not been claimed by the holders thereof after two years from the date when payment is due, except where the funds are held for the payment of outstanding checks, drafts or other instruments of the sinking fund depository.

the holders within two years from the date payment was due. After another five years (seven years total), the governmental unit is required to escheat the unclaimed funds to the Commonwealth.[7] However, contrary to Section 8224(f) of the Debt Act, the Banks failed to return to Delaware County all unclaimed funds after two years, and instead, after the funds remained unclaimed for the entire seven years, escheated them to the Commonwealth under the Fiscal Code.[8]

Delaware County filed a six count amended class action complaint alleging violation of the Debt Act, breach of fiduciary duty, conversion, unjust enrichment, accounting and the establishment of a constructive trust over the unclaimed funds in the possession of the Banks. The "Wherefore Clause," in addition to asking for the class to be certified and a constructive trust, asked only for damages, interest and costs. In their answer, the Banks averred that they had escheated the monies to the Commonwealth, and that they were relieved of all liability for the unclaimed funds under Section 1301.14 of the Fiscal Code, added by the Act of December 9, 1982, P.L. 1057, *as amended,* 72 P.S. § 1301.14, making the Commonwealth solely liable. (Reproduced Record at 36a, 50a–52a).

Even though Delaware County sought a constructive trust over the unclaimed funds in the possession of the Banks only, after filing an answer and new matter to the amended complaint, PNC served a third-party complaint on the Commonwealth and the Honorable Barbara Hafer, Treasurer of the Commonwealth (Treasurer Hafer), and First Union served a third-party complaint on Treasurer Hafer contending that all unclaimed bond payment funds had already been escheated to the Commonwealth and were currently in the possession of Treasurer Hafer. The Banks contended that because, under Section 1301.14 of the Fiscal Code,[9] the Com-

---

7. Section 1301.9 of Article XIII.1 of the Fiscal Code (Fiscal Code), Act of April 9, 1929, P.L. 343, added by the Act of December 9, 1982, P.L. 1057, *as amended,* 72 P.S. § 1301.9 (1982), actually requires a governmental unit to escheat all unclaimed property seven years from the date it first became distributable; however, in this case, the Banks had the right to possess the unclaimed funds for the first two years, leaving Delaware County with a total of five years of actual possession prior to escheatment. Section 1301.9 was amended June 29, 2002, wherein the General Assembly changed the seven year escheatment period to five years; however, the facts relevant to this case occurred prior to this amendment.

8. Until 1992, Article XIII.1 of the Fiscal Code was administered by the Secretary of Revenue of the Commonwealth who is still designated by the statute as the responsible Commonwealth official today. By Act No. 180 of 1992, however, the General Assembly amended The Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. § 325, to provide, *inter alia,* that "[t]he powers and duties of the Secretary of Revenue

under Article XIII.1 of the [Fiscal Code] are hereby transferred to the State Treasurer."

9. That provision provides, in relevant part:
Upon the payment or delivery of the property to the State Treasurer, the Commonwealth shall assume custody and shall be responsible for the safekeeping thereof. Any person who pays or delivers property to the State Treasurer under this article is relieved of all liability with respect to the safekeeping of such property so paid or delivered for any claim which then exists or which thereafter may arise or be made in respect to such property. Any holder who has paid moneys to the State Treasurer pursuant to this article may make payment to any person appearing to such holder to be entitled thereto.... Upon proof of such payment by a holder and proof that the payee was entitled thereto, the State Treasurer shall forthwith reimburse the holder for such payment together with interest from the date of receipt of such proofs by the State Treasurer to a date within thirty (30) days of the date of mailing of the reimbursement ... [.]

monwealth was required to reimburse them for any such payment that they made, it was an indispensable party. The Banks then filed motions to transfer the matter to this Court pursuant to Section 761 of the Judicial Code, 42 Pa.C.S. § 761, claiming that the Commonwealth was an indispensable party. Treasurer Hafer answered, contending that she was an indispensable party if any funds that were being sought were in her possession but did not seek to intervene in the litigation. Delaware County opposed the petitions, contending that the Commonwealth was not an indispensable party to the action and that there were administrative remedies available. Agreeing with Delaware County, the trial court denied the motions to transfer, finding that the Commonwealth was not an indispensable party, and the Banks filed interlocutory appeals with this Court,[10] seeking a determination as to whether this Court or the trial court has jurisdiction over Delaware County's action.

■ Pursuant to Section 761(a) of the Judicial Code, 42 Pa.C.S. § 761(a), "[t]he Commonwealth Court shall have original jurisdiction of all civil actions or proceedings: (1) Against the Commonwealth government ... [.]" In *Piper Aircraft Corporation v. Insurance Company of North America*, 53 Pa.Cmwlth. 209, 417 A.2d 283, 285 (1980), we held that "for this Court to have exclusive original jurisdiction over a suit against the Commonwealth and another party, the Commonwealth must be an indispensable party to the action." We later defined an indispensable party as "one whose rights are so connected with the claims of the litigants that no relief can be granted without infringing upon those rights ... The mere naming, however, of

the Commonwealth or its officers in an action does not conclusively establish this court's jurisdiction, and the joinder of such parties when they are only tangentially involved is improper." *Pennsylvania School Boards Association, Inc. v. Association of School Administrators, Teamsters Local 502*, 696 A.2d 859, 867 (Pa.Cmwlth. 1997).

■ The criteria used to determine whether an absent party is indispensable are:

1. Do absent parties have a right or interest related to the claim?

2. If so, what is the nature of the right or interest?

3. Is that right or interest essential to the merits of the issue?

4. Can justice be afforded without violating due process rights of absent parties?

*Montella v. Berkheimer Associates*, 690 A.2d 802, 803 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 548 Pa. 675, 698 A.2d 597 (1997).

■ The Banks and Treasurer Hafer contend that the Commonwealth is an indispensable party because the Commonwealth has in its possession the escheated funds under Section 1301.14 of the Fiscal Code. While the Commonwealth admittedly has in its possession escheated unclaimed funds due to bondholders who purchased Delaware County bonds, the question in this case is whether the Commonwealth has within its possession funds over which Delaware County has made claim and whether those funds can be obtained by Delaware County in this litigation.

In this case, it is undisputed that:

---

72  P.S. § 1301.14.

**10.**  *See* Pa. R.A.P. 312 (stating that an appeal from an interlocutory order may be taken by

permission pursuant to Chapter 13 of the Pennsylvania Rules of Appellate Procedure).

- All abandoned and unclaimed property and property without a rightful or lawful owner as hereafter set forth is subject to the custody and control of the Commonwealth. Section 1301.2(a) of the Fiscal Code, 72 P.S. § 1301.2(a).[11]
- The Banks were required to return to Delaware County all funds deposited for the payment of the bonds unclaimed by the holders within two years from the date payment was due. 53 Pa.C.S. § 8224(f).
- After seven years the bond payments become unpaid, Delaware County is required to escheat the unclaimed bond payments to the Commonwealth. 72 P.S. § 1301.9 (1982);[12] 72 P.S. § 1301.2(a).
- Rather than returning the unclaimed payments to Delaware County after two years and Delaware County escheating the unclaimed payments after five years, the Banks, after seven years, escheated unclaimed bond payments directly to the Commonwealth.
- Even if the Banks did everything that Delaware County said they should

have done, the unclaimed bond funds went to the Commonwealth at the exact time they would have if Delaware County had held the funds for five years and the funds are now properly in the Commonwealth's possession.

As a result, there are no claims that Delaware County or the Banks can make under any theory against unclaimed bond payments now in the Commonwealth's possession. The only ones that would have a claim to those funds now are the bond holders, who are not part of this litigation. In other words, if DELAWARE COUNTY WINS EVERYTHING AND THE BANKS LOSE EVERYTHING, THE COMMONWEALTH WOULD NOT BE REQUIRED TO GIVE ANY FUNDS BACK. Because this is a dispute solely between Delaware County and the Banks, there is no basis for this action to be in our original jurisdiction.

Moreover, if perchance, the Banks escheated to the Commonwealth funds to which Delaware County had a claim, we would still conclude that jurisdiction lies with the trial court. Section 1301.14 of the

11.  Section 1301.2(a) of the Fiscal Code provides:

(a) All abandoned and unclaimed property and property without a rightful or lawful owner as hereafter set forth is subject to the custody and control of the Commonwealth:
  1.  If it is tangible and physically located within the Commonwealth; or
  2.  If it is intangible, and (i) the last known address of the owner, as shown by the records of the holder, is within the Commonwealth; or (ii) the last known address of the owner as shown by the records of the holder is within a jurisdiction, the laws of which do not provide for the escheat or custodial taking of such property, and the domicile of the holder is within the Commonwealth; or (iii) no address of the owner appears on the records of the holder and the domicile of the holder is within the Commonwealth. Where the records of the

holder do not show a last known address of the owner of a travelers check or money order, it shall be presumed that the state in which the travelers check or money order was issued is the state of the last known address of the owner; or (iv) no address of the owner appears on the records of the holder and the domicile of the holder is not within the Commonwealth, but it is proved that the last known address of the owner is in the Commonwealth.
  72  P.S. § 1301.2(a).

12.  That provision provides, in relevant part:
[A]ll property held for the owner by any court, public corporation, public authority or instrumentality of the United States, the Commonwealth, or any other state, or by a public officer or political subdivision thereof, unclaimed by the owner for more than seven (7) years from the date it first became demandable or distributable.

Fiscal Code provides, in relevant part, that "[u]pon the payment or delivery of the property to the State Treasurer, the Commonwealth shall assume custody and shall be responsible for the safekeeping thereof. Any person who pays or delivers property to the State Treasurer under this article is relieved of all liability with respect to the safekeeping of such property so paid or delivered for any claim which then exists or which thereafter may arise or be made in respect to such property." Once the Banks escheated the money to the Commonwealth, it was relieved of all liability for safekeeping those funds.

If Delaware County had a claim over the funds, then it would have to seek them directly from the Commonwealth under the provisions for making such a claim under the Fiscal Code. Section 1301.19 of the Fiscal Code, 72 P.S. § 1301.19, provides that "[a]ny person claiming an interest in any property paid or delivered to the Commonwealth under this article may file a claim thereto or to the proceeds from the sale thereof on the form prescribed by the State Treasurer." Section 1301.20(a) of the Fiscal Code, 72 P.S. § 1301.20(a), goes on to provide that "[t]he State Treasurer shall consider any claim filed under this article and may hold a hearing and receive evidence concerning it. If a hearing is held, the State Treasurer shall prepare a finding and a decision in writing on each claim filed, stating the substance of any evidence heard by the State Treasurer and the reasons for the State Treasurer's decision. The decision shall be a public record. Section 1301.21 of the Fiscal Code provides a right of appeal to this court, stating:

Any person aggrieved by a decision of the State Treasurer, or as to whose claim the State Treasurer has failed to act within ninety (90) days after the filing of the claim, may commence an action in the Commonwealth Court to establish his claim. The proceeding shall be brought within thirty (30) days after the decision of the State Treasurer or within one hundred twenty (120) days from the filing of the claim if the State Treasurer fails to act. The action shall be tried de novo without a jury.

72 P.S. § 1301.21. Because the Banks were relieved of any liability when they turned over any unclaimed bond payments to the Commonwealth, they were relieved of any responsibility and Delaware County has to seek redress in accordance with the procedure set forth above.

Because there are no unclaimed funds that are in the possession of the Commonwealth that Delaware County has or could make a claim against, and, if it were making such a claim, redress would have to be first sought through the process set forth in the Fiscal Code, this case only requires the trial court to decide if the Banks are liable to Delaware County for any damages that it sustained during the five years that the Banks had unclaimed bond funds in their possession in violation of Section 8224(f) of the Debt Act, the Commonwealth is not an indispensable party. Accordingly, the orders of the trial court are affirmed.

### ORDER

AND NOW, this *1st* day of *July*, 2003, the orders of the Court of Common Pleas of Delaware County, No. 01–6882, dated June 10, 2002, and No. 01–6326, dated July 9, 2002, are affirmed.

President Judge COLINS dissents.

Judge LEADBETTER dissents and joins in the dissenting opinion of Judge Friedman.

Dissenting opinion by Judge FRIEDMAN.

I respectfully dissent. The majority holds that this court does not have exclu-

sive original jurisdiction over civil actions brought by Delaware County in the Court of Common Pleas of Delaware County (trial court) to recover unclaimed bond funds that have been escheated to The Commonwealth of Pennsylvania and are now in the custody of The Honorable Barbara Hafer, Treasurer of the Commonwealth of Pennsylvania. I cannot join the majority's opinion because it: (1) ignores the plain language of section 761 of the Judicial Code, 42 Pa.C.S. § 761; (2) fails to consider the legislative purpose behind section 761 of the Judicial Code, contrary to *Action Coalition of Elders v. Allegheny County Institution District*, 493 Pa. 302, 426 A.2d 560 (1981); (3) fails to apply the correct test for determining whether the Commonwealth is an indispensable party; and (4) decides the merits of the third party actions against the Commonwealth.[1]

Delaware County has filed class action lawsuits against certain banks[2] (the Banks) that served as sinking fund depositories for bonds issued by Delaware County in 1974, 1992 and 1995. The Banks were required by law to return all unclaimed bond payments to Delaware County two years after the payments were due. Section 8224(f) of the Local Government Unit Debt Act (Debt Act), 53 Pa.C.S. § 8224(f). Delaware County alleges that the Banks failed to comply with this statutory requirement, and, as a result, Delaware County seeks damages, with allowable interest, and the establishment of a constructive trust[3] over all monies wrongfully retained by the Banks.

In response, the Banks aver that they are no longer liable for the monies because the Banks escheated the monies to the Commonwealth.[4] Because Delaware County seeks a constructive trust over monies in the possession of the Commonwealth and because the Commonwealth is responsible under the law for the safe-

---

1. Were the merits of this case before us, I might agree with the conclusions reached by the majority. However, the only question before us here is whether we have exclusive original jurisdiction over the actions against the Commonwealth that are now before the trial court.

2. The banks sued by Delaware County are PNC Bank, National Association (sued as PNC Financial Services Group, Inc.), First Union Corporation, First Union National Bank, individually and as successors-in-interest to CoreStates Bank, NA, CoreStates Financial Corp., First Pennsylvania Bank, Southeast National Bank of Pennsylvania, Delaware County National Bank, Philadelphia National Bank, Meridian Bank, First Fidelity Bank, NA, and John Doe Banks Nos. 1 through 300.

3. Our supreme court has stated the requirements for a constructive trust in *Balazick v. Ireton*, 518 Pa. 127, 134–35, 541 A.2d 1130, 1133 (1988) (citations omitted).

"A constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." ... [O]ne necessary aspect of the defendant's holding title to property is that he must have acquired it in some way that creates the equitable duty in favor of the plaintiff.... "A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee...." ... "They (constructive trusts) arise when the legal title to property is obtained by a person in violation, express or implied, of some duty owed to the one who is equitably entitled...."

4. *See* section 1301.14 of The Fiscal Code, Act of April 9, 1929, P.L. 343, *added by* section 5 of the Act of December 9, 1982, P.L. 1057, 72 P.S. § 1301.14 (stating that any person who delivers abandoned or unclaimed property to the Commonwealth is relieved of all liability with respect to the safekeeping of such property for any claim which may arise with respect to such property).

keeping of escheated monies, the Banks served third party complaints on the Commonwealth. Having joined the Commonwealth as an additional defendant, the Banks filed motions to transfer their respective cases to this court. The trial court denied the motions, and the Banks filed interlocutory appeals with this court, seeking a determination as to whether this court or the trial court has original jurisdiction over Delaware County's actions.

Thus, the question presented here is whether the joinder of the Commonwealth as an additional defendant in the actions brought by Delaware County to recover monies from the Banks gives this court exclusive original jurisdiction over the matter.

## I. Original Jurisdiction

The majority sets forth a portion of section 761 of the Judicial Code, 42 Pa.C.S. § 761, which governs this court's original jurisdiction, but the majority does not consider the plain language of the provision in light of the facts of this case. (*See* Majority op. at 598.) The rules of statutory construction direct us to examine the words of a statute to ascertain the intention of the General Assembly.[5] Thus, I shall do so here.

Section 761 of the Judicial Code provides, in pertinent part, as follows:

**(a) General Rule.**—The Commonwealth Court shall have original jurisdiction of all civil actions or proceedings:

(1) *Against the Commonwealth government,* including any officer thereof, acting in his official capacity . . . .

(2) **By** the Commonwealth government, including any officer thereof, acting in his official capacity . . . .

**(b) Concurrent and exclusive jurisdiction.**—*The jurisdiction of the Commonwealth Court under subsection (a) shall be **exclusive** except as provided in section 721 (relating to original jurisdiction [of Supreme Court]) and except with respect to actions or proceedings by the Commonwealth government, including any officer thereof, acting in his official capacity, where the jurisdiction of the court shall be concurrent with the several courts of common pleas.*[6]

**(c) Ancillary matters.**— . . . . To the extent prescribed by general rule the Commonwealth Court shall have *ancillary jurisdiction over any claim or other matter which is related to a claim or other matter otherwise within its **exclusive** original jurisdiction.*

42 Pa.C.S. § 761 (emphases added).

Here, the Banks have joined the Commonwealth as an additional defendant. Rule 1706.1 of the Pennsylvania Rules of Civil Procedure states that, in a class action, a defendant may join a person as an additional defendant who may be: (1) sole-

---

5. *See* Section 1921(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(a) (stating that the object of all interpretation and construction of statutes is to ascertain the intention of the General Assembly); *see also* Section 1921(b) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(b) (stating that when the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit).

6. Where the Commonwealth Court and the courts of common pleas have concurrent jurisdiction over proceedings brought by the Commonwealth, the Commonwealth may proceed in the forum of its choice. *See In re Pennsylvania Crime Commission,* 453 Pa. 513, 309 A.2d 401 (1973) (stating that, because the Commonwealth Court and the courts of common pleas have concurrent subpoena enforcement power, the Pennsylvania Crime Commission has the right to enforce a subpoena in the forum of its choice).

ly liable on the plaintiff's cause of action; (2) liable over to the joining party on the plaintiff's cause of action; or (3) jointly or severally liable with the joining party on the plaintiff's cause of action. Pa. R.C.P. No. 1706.1. Rule 2255(a) of the Pennsylvania Rules of Civil Procedure states that the procedure "between the party joining an additional defendant and the additional defendant shall be the same as though the party joining the additional defendant were a plaintiff and the additional defendant were a defendant." Pa. R.C.P. No. 2255(a).

Consequently, the third party actions of the Banks against the Commonwealth are civil actions against the Commonwealth government and an officer acting in her official capacity. Thus, I would conclude

that, under the plain language of sections 761(a)(1) and 761(b) of the Judicial Code, this court has exclusive original jurisdiction over the third party actions against the Commonwealth. I also would conclude that, under section 761(c) of the Judicial Code, this court has ancillary jurisdiction over Delaware County's actions against the Banks.[7]

## II. Legislative Purpose

To the extent that the words of section 761 of the Judicial Code are ambiguous, I submit that the legislative purpose for the provision supports the interpretation set forth above. The majority fails to consider the legislative purpose of section 761 of the Judicial Code; however, I consider it here because the rules of statutory construction

---

7. I realize that section 761 of the Judicial Code has been interpreted to mean that this court has exclusive original jurisdiction over civil actions against the Commonwealth only where the Commonwealth is an original or indispensable party. I question the continued relevance of the indispensable party analysis, which, to me, seems to conflict with the plain language of section 761 of the Judicial Code. As the following discussion shows, the analysis arose from a perceived statutory conflict which no longer exists.

In *Action Coalition of Elders*, our supreme court explained an apparent conflict that existed at that time with respect to the Commonwealth Court's exclusive original jurisdiction. On the one hand, section 401 of the Appellate Court Jurisdiction Act stated that the Commonwealth Court had *exclusive original jurisdiction* over civil actions *against* the Commonwealth, i.e., where the Commonwealth was a *defendant*. *Id*. On the other hand, section 402 of the Appellate Court Jurisdiction Act stated that the Commonwealth Court had exclusive *appellate* jurisdiction over final orders of the *courts of common pleas* in civil actions where the Commonwealth was a *party*, i.e., where the Commonwealth was a *plaintiff or defendant*. *Id*. Thus, by statute, the Commonwealth Court had *exclusive* original jurisdiction over civil actions with a Commonwealth defendant, but the courts of common pleas *also* had original jurisdiction over

civil actions with a Commonwealth defendant. The apparent conflict required an explanation.

The court in *Action Coalition of Elders* explained that the legislature evidently was aware that there may be litigation in the courts of common pleas where, as here, the Commonwealth is joined by a third party proceeding. *Id*. The court stated that, in such cases, the legislature intended for the courts of common pleas to retain jurisdiction and for the Commonwealth Court to exercise appellate review. *Id*. Thus, our supreme court held that the Commonwealth Court's exclusive original jurisdiction extends only to cases where the Commonwealth is an *original* party defendant or is determined to be an *indispensable* party defendant. *Id*.

In 1980, the legislature amended the statute to eliminate the conflict, deleting language indicating that the courts of common pleas could have original jurisdiction over civil actions with a Commonwealth defendant. Now, section 762(a)(1)(ii) of the Judicial Code indicates that the courts of common pleas have original jurisdiction over civil actions or proceedings brought *by* the Commonwealth, i.e., only where the Commonwealth is a *plaintiff*. 42 Pa.C.S. § 762(a)(1)(ii). Thus, the statute no longer appears to authorize the courts of common pleas to exercise original jurisdiction in a civil action or proceeding with a Commonwealth *defendant*.

provide for it and because our supreme court instructs us to do so in *Action Coalition of Elders*.[8]

One of the principal reasons for the creation of this court was "to assure that original jurisdiction of cases against officials of the Commonwealth whose duties are concerned with statewide formulation of policy would be concentrated in one court." *Action Coalition of Elders*, 493 Pa. 302, 314–15, 426 A.2d 560, 566. Our supreme court has stated that the legislature "clearly recognized the interest of the state in having an expert, specialized tribunal, Commonwealth Court, articulate uniform statewide standards in cases affecting the sovereign. **This legislative purpose must be taken into account in determining the scope of original jurisdiction of Commonwealth Court.**" *Id.* at 315, 426 A.2d at 567 (emphasis added).

It is apparent that the class actions we are considering here affect the sovereign and involve the articulation of a uniform statewide standard relating to the Commonwealth's custody of escheated monies. Thus, it is better for this court, rather than a county court, to exercise original jurisdiction over the actions.

### III. Indispensable Party

The majority concludes that the Commonwealth is not an indispensable party to

the Delaware County actions because neither Delaware County nor the Banks can obtain the escheated funds possessed by the Commonwealth. In other words, the majority has determined that relief can be granted without infringing upon the Commonwealth's interest in the escheated monies. (*See* Majority op. at 598, 599.) However, the test for determining whether a party is an indispensable party is *not* whether relief can be granted without infringing upon the party's interest.[9] *CRY, Inc. v. Mill Service, Inc.*, 536 Pa. 462, 640 A.2d 372 (1994).

In *CRY*, our supreme court set forth the following test for determining whether a party is indispensable:

1. Does the absent party have a right or interest related to the claim?

2. If so, what is the nature of that right or interest?

3. Is that right or interest essential to the merits of the issue?

4. Can justice be afforded without violating the due process rights of the absent party?

Applying this test to a Commonwealth agency, our supreme court stated, first, that the agency had an interest related to the claim because the agency was respon-

---

**8.** *See* Section 1921(c) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(c) (stating that when the words of a statute are not explicit, the intention of the General Assembly may be ascertained by considering the object to be attained).

**9.** In *CRY, Inc. v. Mill Service, Inc.*, 536 Pa. 462, 640 A.2d 372 (1994), our supreme court reversed this court's holding that the Commonwealth was not an indispensable party in that case. In doing so, the court rejected the indispensable party test utilized here by the majority.

According to Commonwealth Court, the test of whether a party is indispensable is "that an indispensable party's rights must be so

closely connected to those of the litigants that an order or decree cannot be made without impairing those rights[.]" The court added:

a Commonwealth agency should not be declared an indispensable party unless meaningful relief cannot conceivably be afforded without the sovereign itself becoming involved.

The initial question which arises in this case [then] is the proper test for determining the indispensability of a party.

*CRY*, 536 Pa. at 467, 640 A.2d at 375 (citations omitted). The court then went on to set forth the proper test.

sible for regulating the harm alleged in the lawsuit. *Id.* Second, the nature of the interest was such that it *"may* be affected by an adjudication of [the] lawsuit." *Id.* at 469, 640 A.2d at 376 (emphasis added). Third, the agency's interest was essential to the merits of the lawsuit because the agency's regulatory activity "may" be affected and because the cooperation of the agency "may" be required. *Id.* (emphasis added). Finally, because the agency's non-cooperation in carrying out a judicial remedy would require further litigation, the court stated that justice could not be afforded in the absence of the agency. *Id.*

Here, first, the Commonwealth has an interest in Delaware County's lawsuit because the Commonwealth is responsible for the safekeeping of the funds to which Delaware County claims entitlement. Second, the nature of the Commonwealth's interest in Delaware County's lawsuit is to protect the funds against an improper claim of entitlement. Third, the Commonwealth's interest is essential to the merits of the lawsuits because the Commonwealth may be ordered to relinquish funds in the General Fund to Delaware County, and such an order would be improper absent the Commonwealth's participation in the litigation. Finally, in the event that the Commonwealth is ordered by a court to disgorge funds that have escheated to the Commonwealth, the Commonwealth may not challenge the propriety of that award unless it is a party. Because Delaware County is seeking the appropriation to it of funds currently in the possession of the Commonwealth, the Commonwealth is an indispensable party.

## IV. Merits

The majority states that the Banks have no liability to Delaware County with respect to the escheated funds.[10] (Majority op. at 600.) The majority also states that neither Delaware County nor the Banks can obtain the escheated funds possessed by the Commonwealth.[11] (Majority op. at 599.) Thus, the majority states in its final paragraph that "this case only requires the trial court to decide if the Banks are liable to Delaware County for any damages that it sustained during the five years that the Banks had unclaimed bond funds in their possession...." (Majority op. at 600.)

In other words, without a record, without an adjudication of Delaware County's class actions and before the matters are ripe, the majority has decided the merits of the Banks' third party actions against the Commonwealth. The majority also has decided the merits of Delaware County's constructive trust claim against the Banks.[12] Because the only issue before us in this *interlocutory appeal* is whether we have original jurisdiction of this case, I believe it is improper to consider the merits at this time.

Accordingly, unlike the majority, I would reverse.

---

**10.** Under the statute, the Banks have no liability to Delaware County for funds properly escheated to the Commonwealth. However, the majority does not consider whether the Banks *properly* escheated *all* of the funds to the Commonwealth. If there is evidence that the Banks have *not* properly escheated all the funds to the Commonwealth, which, of course, would not appear in a "record" at this stage of the proceedings, the Banks may have some liability to Delaware County.

**11.** Thus, if the Commonwealth were to file with the trial court a motion to dismiss the Banks' third party actions, the trial court would have to grant the motion.

**12.** I find it ironic that this court, in effect, has decided most of the case while holding that this court does not have original jurisdiction to decide the case.