249 N.J. Super. 403 (1991)
592 A.2d 604
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT AND CROSS-APPELLANT,
v.
ELSINORE SHORE ASSOCIATES, A NEW JERSEY PARTNERSHIP, DEFENDANT-APPELLANT AND CROSS-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 14, 1991.
Decided July 3, 1991.
*404 Before Judges BRODY, GRUCCIO and D'ANNUNZIO.
David M. Satz, Jr. argued the cause for appellant/cross-respondent (Saiber Schlesinger Satz & Goldstein, attorneys; David M. Satz, Jr. and Robert B. Nussbaum, on the brief).
Robert P. Krenkowitz, Deputy Attorney General, argued the cause for respondent/cross-appellant (Robert J. Del Tufo, Attorney *405 General, attorney; Michael R. Clancy, Assistant Attorney General, of counsel; Robert P. Krenkowitz, on the brief).
The opinion of the court was delivered by BRODY, J.A.D.
We now hold that gambling casino funds in the amount of unredeemed gaming chips and slot machine tokens are abandoned intangible property subject to the Uniform Unclaimed Property Act (the Act), N.J.S.A. 46:30B-1 et seq., and must therefore be paid to the State Treasurer for protective custody.
The Casino Control Commission (Commission) ordered that on May 22, 1989, defendant close the casino at its Atlantis Casino Hotel in Atlantic City. The Commission also ordered that defendant hold in trust $875,000 for the payment of unredeemed gaming chips and tokens issued by defendant and its predecessor Playboy Elsinore Associates. About two weeks later, on June 8, the Commission ordered a conservator, whom it had previously appointed pursuant to N.J.S.A. 5:12-130.1 et seq., to take exclusive possession of all of defendant's property relating to the casino and hotel operation, including the funds being held for unredeemed chips and tokens. However, the funds remained where they had been invested and defendant continued to receive the interest they earned and use it in its other corporate activities.
On August 30, 1989, defendant petitioned the Commission to release the funds for its general use on the assurance, which it still maintains, that it will cash any outstanding chips and tokens whenever they are offered for redemption. In November 1989 the Commission denied defendant's petition on the ground that the issue of whether the funds are subject to the Act is justiciable exclusively in court. The Commission took possession of the funds in December 1989 and invested them in the State Cash Management Fund, pending resolution of the issue. In April 1990 the State commenced the present summary *406 action in the Chancery Division, pursuant to N.J.S.A. 46:30B-97, to resolve the issue.
The Uniform Unclaimed Property Act became effective April 14, 1989. Like the 1951 Act, N.J.S.A. 2A:37-29 et seq. (repealed), the present Act provides for custodial escheat as distinguished from absolute escheat, which had prevailed under the 1946 Act, N.J.S.A. 2A:37-11 et seq. (repealed). The distinction was explained in Commonwealth of Penna. v. Kervick, 114 N.J. Super. 1, 8, 274 A.2d 626 (Ch.Div. 1971), rev'd on other grounds 60 N.J. 289, 288 A.2d 289 (1972):
Escheat in New Jersey derives from the right of the sovereignty of the State "as the original and ultimate proprietor" of all property within its jurisdiction. The purpose of all escheat laws is not only to enrich the State but to put into active use funds that are unclaimed and lying dormant. Yet, escheat statutes should be distinguished from custodial statutes which make the State a custodian of the abandoned property, subject to delivery to those who prove ownership or a right to possession. The Custodial Escheat Act of 1951 amended the prior Absolute Escheat Act of 1946 to add an alternative method of escheat, using an intermediate custodial procedure.
This distinction affects our approach when interpreting the Act. The question is no longer whether the owner shall forfeit the property to the State as it had been when there was an absolute escheat, but rather whether the State or the holder shall have use of the property until the owner claims it and whether the State or the holder shall enjoy the windfall if the owner never claims it. Because a custodial escheat does not forfeit the owner's claim, there is no need to interpret the Act narrowly as there had been when the escheat was absolute. State v. Sperry & Hutchinson Co., 23 N.J. 38, 43-44, 127 A.2d 169 (1956).
The starting point in the Act is N.J.S.A. 46:30B-9 (Section 9), which describes in general terms property that is subject to the State's custody:
Unless otherwise provided in this chapter or by other statute of this State, intangible property is subject to the custody of this State as unclaimed property if the conditions raising a presumption of abandonment under Articles 2 and 5 through 16 of this chapter are satisfied and the conditions under R.S. 46:30B-10 [Section 10] are satisfied. The common law doctrine of bona vacantia shall *407 remain viable with respect to unclaimed property not covered by this chapter or another statute of this State.
We need not concern ourselves with the scope of the common-law doctrine of bona vacantia (vacant goods, i.e., unclaimed property) because we are satisfied that the funds in question are covered by the Act.
Section 9 requires that we first determine whether the funds are "intangible property." If they are, we must next determine whether Articles 2 and 5 through 16 raise a presumption of abandonment on the facts presented. If so, we finally must consider whether the conditions of Section 10 have been met.
N.J.S.A. 46:30B-6i defines "intangible property" to include:
(1) Moneys, checks, drafts, deposits, interest, dividends, and income; ...
The funds are undoubtedly "moneys." The 1951 Act had a similar provision, "... [T]he State may take into its protective custody property consisting of cash, dividends, interest or wages owed by any corporation organized or doing business under the laws of this State...." L. 1951, c. 304, § 5. The Supreme Court interpreted the quoted language to be broad enough to include corporate funds necessary to redeem trading stamps. State v. Sperry & Hutchinson Co., supra.
Article 2, N.J.S.A. 46:30B-7 to -8, establishes as a general rule that intangible personal property is presumed abandoned if it remains unclaimed for five years. Articles 5 through 16, N.J.S.A. 46:30B-16 through N.J.S.A. 46:30B-45, modify the general rule in particular circumstances. N.J.S.A. 46:30B-7 provides:
Except as otherwise provided by this chapter, all intangible property, including any income or increment derived therefrom, less any lawful charges, that is held, issued, owing in the ordinary course of a holder's business and has remained unclaimed by the owner for more than five years after it became payable or distributable is presumed abandoned.
The funds in question have been owing in the ordinary course of defendant's business from the time the chips and tokens were issued. However, although defendant and its predecessor had kept a separate running account of the amount owing on unredeemed Playboy chips and tokens and on unredeemed *408 Atlantis chips and tokens, they did not keep track of when and to whom each chip and token was issued and therefore there is no record of how long any particular chip or token has remained unclaimed.
The problem is not insurmountable in this case. Playboy did not issue chips and tokens after April 1984, the date that it ceased operating the casino. That was more than five years before the State commenced this suit. Therefore, the amount of its unredeemed chips and tokens, $446,719 as of July 5, 1990, must now be turned over to the custody of the State. Moreover, the entire fund has been held by the Commission since December 1989, more than a year ago. N.J.S.A. 46:30B-41.2 reduces the period that raises a presumption of abandonment from five years to one year if the property is held by an agency of a state. It therefore appears, at least facially, that if it amends its complaint to invoke the one-year period, the State would be entitled to custody of all the funds being held by the Commission.
Section 10 lists in the disjunctive several additional conditions, any one of which must be satisfied to "subject intangible personal property to the custody of this State as unclaimed property." Condition 10f, N.J.S.A. 46:30B-10f, is satisfied here. It provides in relevant part:
f. The transaction out of which the property arose occurred in this State, and
(1) The last known address of the apparent owner or other person entitled to the property is unknown, . ..
Moreover, Section 10 is not intended to protect holders from the State's assertion of custodial escheat. As explained by Judge Levy in State v. Chubb Corp., 239 N.J. Super. 257, 263-265, 570 A.2d 1313 (Ch.Div. 1989), the section is intended to resolve disputes between states claiming escheat of the same property. That is not the case here. In the event defendant is later found to be liable to another state for any part of the funds at issue, New Jersey is bound to indemnify defendant against such liability. N.J.S.A. 46:30B-65.
*409 Defendant relies on State v. Sperry & Hutchinson Co., 56 N.J. Super. 589, 153 A.2d 691 (App.Div. 1959), aff'd 31 N.J. 385, 157 A.2d 505 (1960). The case is distinguishable. There the Supreme Court held that money Sperry & Hutchinson (S & H) saved by not having to provide merchandise for unredeemed trading stamps did not constitute "specifically identifiable property subject to escheat...." Ibid. The Court based its holding on the fact that there was no evidence that any of the retail customers who were issued unredeemed stamps had accumulated enough to fill a book, a condition that had to be satisfied before S & H became liable to redeem the stamps. Here the owners of chips and tokens do not have to satisfy any condition to render defendant liable to redeem the chips and tokens.
The remaining issues are raised in the State's cross-appeal. It argues that defendant is liable for penalties for failing to report that it was a holder of abandoned property subject to the Act and liable to the Treasurer for the interest that the property earned.
N.J.S.A. 46:30B-46 to -49 require that before November 1 of each year the holder of property subject to the Act file a report with the State Treasurer stating, among other things, the status as of the previous June 30 of property deemed abandoned under the Act. A willful violation of the reporting requirement subjects the holder to penalties. N.J.S.A. 46:30B-104. The trial judge held that defendant was not a holder during the reporting period and therefore not subject to the penalties.
A "holder" is defined in N.J.S.A. 46:30B-6g as
... a person, wherever organized or domiciled, who is:
(1) In possession of property belonging to another,
(2) A trustee, or
(3) Indebted to another on an obligation; ...
The first year of reporting under the Act was 1989, the year of its enactment. During that year's reporting period defendant's casino business was in the hands of the conservator appointed by the Commission. Upon his appointment the conservator *410 became vested with title to all of defendant's property and, pursuant to an order of the Commission, he took into his exclusive possession all of defendant's accounts and funds. N.J.S.A. 5:12-130.2. We agree with the trial judge that in the circumstances defendant was not a holder.
Although the conservator had exclusive legal possession and title to the funds, defendant nevertheless continued to receive the interest that the funds earned. We agree with the State that defendant is obliged to pay that interest to the custody of the Treasurer. As we previously noted, N.J.S.A. 46:30B-7 defines intangible property subject to the Act to include "any income or increment derived therefrom." The State correctly argues that the income derived from the funds became a part of the property subject to the Act and may not be kept by defendant. This result is not only required by the Act, but is also consistent with the recognized rule that "interest follows principal." See Matthews v. State, 187 N.J. Super. 1, 10, 453 A.2d 543 (App.Div. 1982), appeal dismissed as moot 93 N.J. 298, 460 A.2d 694 (1983) (proceeds from investment of Casino Revenue Fund credited to Fund and not to State Treasury).
The matter is remanded to the Chancery Division to enable the State to move to amend the complaint and to enable the trial judge to modify the judgment consistent with this opinion. We do not preclude defendant from raising any defense to the amendment not inconsistent with this opinion.