992 A.2d 112

**DELAWARE COUNTY, Individually and on behalf of all others similarly situated,**

v.

**FIRST UNION CORPORATION, First Union National Bank, Individually and as Successors–In–Interest to Corestates Bank, NA, Corestates Financial Corp., First Pennsylvania Bank, Southeast National Bank of Pennsylvania, Delaware County National Bank, Philadelphia National Bank, Meridian Bank, First Fidelity Bank, NA, and John Doe Banks Nos. 1 Through 300.**

**Appeal of First Union Corporation and First Union National Bank.**

Supreme Court of Pennsylvania.

Argued April 15, 2009.

Decided April 28, 2010.

William E. Mahoney, Thomas Walter Dymek, C. Clark Hodgson, Jr., Stradley, Ronon, Stevens & Young, L.L.P., Carl A. Solano, Schnader Harrison Segal & Lewis, L.L.P., Philadelphia, for First Union Corporation and First Union National Bank.

Marc L. Ackerman, Brodsky & Smith, L.L.C., Bala Cynwyd, Elizabeth Ann Berney, Milberg, Weiss, Bershad & Schulman, L.L.P., David R. Scott, Ronald G. Henry, Bryn Mawr, for Delaware County.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, GREENSPAN, JJ.

## OPINION

Justice SAYLOR.

In this appeal by allowance, we consider whether Pennsylvania's statute pertaining to the disposition of unclaimed property requires that a local government escheat to the Commonwealth both principal and interest on unclaimed bond funds, or whether only the principal must be escheated.

According to the parties' allegations, Appellee Delaware County ("County") issued a number of general obligation bonds during the time period in question in amounts ranging from approximately $2,000,000 to $85,000,000.[1] The holders of these bonds could present them for payment upon maturation.

---

1. General obligation bonds are governed by the terms of a covenant, *see* 53 Pa.C.S. § 8104, and are guaranteed by the "full faith, credit and taxing power of the local government unit" issuing the bond. *Id.* § 8002(c) (defining "general obligation").

Pursuant to the Local Government Unit Debt Act,[2] the County appointed several banks, including Appellants First Union Corporation and First Union Bank, to serve as sinking fund depositories and then deposited money into the sinking funds for the banks to invest and ultimately pay the bonds as they became due. *See* 53 Pa.C.S. § 8221 (requiring local governments having outstanding bonds to maintain, at a bank or trust company in Pennsylvania, sinking funds for the payment of assumed taxes, principal, and interest on such bonds); *id.* § 8002(c) (defining a sinking fund as "[t]he special fund created pursuant to section 8221 ... for the payment of the principal of and interest on bonds or notes, premium, if any, and assumed taxes, if any, or for the payment of a guaranty").

Some of the County-issued bonds were presented for redemption at various times after maturation, and others were never presented. With regard to the latter group, the Debt Act mandated that the sinking fund depositories return to the County all funds set aside for the payment of bonds that remained unclaimed for two years.[3] Had the banks complied with this directive, the funds would have reverted to the possession of the County for the next five years, after which they would have been presumed abandoned by operation of law if they remained unclaimed. *See* 72 P.S. § 1301.9. At that juncture, the County would have been obligated to escheat the monies to the Commonwealth in accordance with Pennsylvania's Disposition of Abandoned and Unclaimed Property Act.[4]

2. Act of July 12, 1972, P.L. 781, No. 185, §§ 101–109 (as amended 53 P.S. §§ 6780-1–6780–609), *replaced by* Act of Dec. 19, 1996, P.L. 1158, No. 177, § 1 (as amended 53 Pa.C.S. §§ 8001–8271) (the "Debt Act"). The Debt Act implements the constitutional mandate requiring debt-limit legislation for local government units. *See* PA. CONST. art. IX, § 10.

3. That provision states:
 (f) **Return of unclaimed moneys.**—The sinking fund depository shall return to the local government unit all moneys deposited in a sinking fund for the payment of bonds, notes or coupons which have not been claimed by the holders thereof after two years from the date when payment is due....
 53 Pa.C.S. § 8224(f).

4. Act of April 9, 1929, P.L. 343, *added by* Section 5 of the Act of December 9, 1982, P.L. 1057, No 248, § 5 (as amended 72 P.S.

*See* 72 P.S. § 1301.2(a) (specifying that abandoned and unclaimed property, and property without a rightful or lawful owner, is subject to the custody and control of the Commonwealth of Pennsylvania). *See generally Smolow v. Hafer,* 867 A.2d 767, 768–69 n. 2 (Pa.Cmwlth.2005) (describing the mechanics of escheatment under the Unclaimed Property Act), *aff'd* 598 Pa. 561, 959 A.2d 298 (2008). For reasons that do not appear in the record, the banks did not return the monies to the County after two years, as required by Section 8224(f).

The County filed a class action complaint alleging that the bonds were never presented for redemption and the unclaimed funds remained in the possession of the banks.[5] The County demanded the return of the funds and requested compensation for damages it alleged it suffered from the "loss of funds, and interest thereon," as a result of the banks' failure to comply with the Debt Act. R.R. 27a. In this respect, the County's essential averment was that it was harmed by loss of the opportunity, during the five-year period in which it would have possessed the bond funds had the banks complied with the Debt Act, to collect interest on those funds or otherwise use them for County purposes before escheating them to the Commonwealth. Appellants filed an answer and new matter, alleging that, if a bond remained unclaimed for two years after its maturity date, Appellants held the funds in a non-interest-bearing account for an additional five years, and then escheated them to the state, as required by law. *See* 72 P.S. § 1301.6. Because they had remitted the monies, Appellants claimed that they were relieved of liability. *See* 72 P.S. § 1301.14.[6] Appellants also maintained that the County's

§§ 1301.1–1301.29) (the "Unclaimed Property Act"). The abandonment period was reduced from seven to five years effective July 1, 2002, *see Smolow v. Hafer,* 598 Pa. 561, 563 n. 3, 959 A.2d 298, 299 n. 3 (2008), but the seven-year period pertains here as the underlying events preceded this legislative change. Moreover, this difference is of no relevance to the interpretive question presented.

5. The complaint set forth six counts, including violations of the Debt Act, breach of fiduciary duty, conversion, unjust enrichment, accounting violations, and a request for a constructive trust on the funds.

6. Section 1301.14 states: "Upon the payment or delivery of the property to the State Treasurer, the Commonwealth shall assume custody and

claims were barred by the statute of limitations. In response, the County asserted that the statute of limitations is inapplicable under the doctrine of *nullum tempus occurrit regi* ("time does not run against the King"), as the County is an instrumentality of the Commonwealth.

Appellants thereafter filed a third-party complaint, joining the Treasurer of Pennsylvania as an additional defendant, and sought to have the case removed to the original jurisdiction of the Commonwealth Court on the basis that the Commonwealth was an indispensable party. *See* 42 Pa.C.S. § 761. During discovery, however, the Treasurer admitted that, when a holder of property remits it to the Commonwealth, only the amount listed in the bond needs to be forwarded; accretions and interest earned do not need to be remitted. The Treasurer ultimately filed preliminary objections, which were sustained by the trial court, a ruling that was upheld on interlocutory appeal to the Commonwealth Court. *See Delaware County v. J.P. Morgan Chase & Co.*, 827 A.2d 594 (Pa. Cmwlth.2003) (*en banc*). The Commonwealth Court reasoned that neither the County nor Appellants could make a claim against the unclaimed funds in the Commonwealth's possession, and hence, the Commonwealth was not an indispensable party. Rather, the Court stated, the present litigation only concerns whether the banks are liable to the County for damages sustained during the five years that they retained the funds beyond the initial two-year period, a question that does not implicate any property now in the Commonwealth's possession. *See id.* at 599–600. Thus, the court remanded the case to the trial court to resolve that issue.

On remand, Appellants moved for judgment on the pleadings. The trial court decided to stay that motion pending resolution of the County's motion for class certification, which it later granted. Instead of appealing the class certification order, Appellants amended their motion for judgment on the

shall be responsible for the safekeeping thereof. Any person who pays or delivers property to the State Treasurer under this article is relieved of all liability with respect to the safekeeping of such property so paid or delivered for any claim which then exists or which thereafter may arise or be made in respect to such property...." 72 P.S. § 1301.14.

pleadings to additionally allege that the County suffered no legal injury. After the trial court denied Appellants' motion, Appellants lodged a permissive interlocutory appeal with the Commonwealth Court.

Again sitting *en banc,* the Commonwealth Court affirmed. In an opinion authored by Judge Pellegrini, the majority initially determined that, because the County was seeking damages based on violations of the Debt Act, it was attempting to enforce an obligation imposed by law in order to protect a public right or public revenues from loss, and, accordingly, *nullum tempus* applied. Therefore, Appellants could not interpose the statute of limitations as an affirmative defense. *See Delaware County v. First Union Corp.,* 929 A.2d 1258, 1262 (Pa.Cmwlth.2007) (*en banc*). The court then turned to the controlling substantive issue, which it described as "whether investment income earned on unclaimed bond payments during the period that they should have been turned over to the County belong to the bondholders, making them similarly escheatable if unclaimed, or whether the interest belongs to the County." *Id.* at 1260–61. On this question, the court disagreed with Appellants' contention that the County did not suffer legal harm, rejecting their position that any interest earned by the County during the period it would have held the unclaimed funds would have been subject to escheatment.[7] Instead, the court determined that the County would only have been required to remit the contractual obligation underlying the bond, which would not have included additional interest for any post-maturity time period. The court stated:

Bondholders who do not claim their payments are not entitled to interest earned by the Sinking Fund or by the local government on those unclaimed payments. Under the Debt Act, the local government is only required to pay

7. Appellants had predicated that position on the Unclaimed Property Act's definition of "property" as including "all real and personal property, tangible or intangible, all legal and equitable interests therein, *together with any income, accretions, or profits thereof and thereon, and all other rights to property, subject to all legal demands on the same.*" 72 P.S. § 1301.1 (emphasis added).

bondholders principal and interest as stated on the bonds on the date those payments become due and nothing more.

*Id.* at 1263 (citing 53 Pa.C.S. § 8104(a)(3)). Moreover, the court held that the Debt Act is clear: any interest earned on the deposits is for the County's own use. The court observed that, since the County's deposits are not assigned to any particular issued bond, they are used to pay all the bonds when they become due. Likewise, the court reasoned that, since the interest earned on the deposits does not follow any bond, it is used to help fund the repayment of all the bonds. As a result, the accrual of interest decreases the amount the County has to deposit for the payment of the bonds, and because Appellants failed to return the unclaimed funds, the court concluded that the County suffered damages by being deprived of income that it would have been free to use for any purpose before the funds had to be escheated. *See id.* at 1264.

Judge Colins authored a concurring and dissenting opinion that was joined by President Judge Leadbetter and Judge Leavitt. He agreed with the majority that *nullum tempus* applied, but he did not believe that the County was entitled to damages for Appellants' failure to return the funds or any interest the County would have earned during the period Appellants improperly retained the funds. Rather, he opined that the amount remittable to the Commonwealth should include, not only the original obligation, but any accrued interest as well. *See First Union Corp.,* 929 A.2d at 1265 (Colins, J., concurring and dissenting). Judge Colins maintained that this conclusion comported with both the Debt Act and the construct that "interest follows principal." *See id.* (quoting *Lessner v. Rubinson,* 527 Pa. 393, 401, 592 A.2d 678, 682 (1991) (stating that retention of the interest on a certificate of deposit demonstrates ownership because "[i]t is fundamental that the interest follows the principal in ownership")). Further, Judge Colins believed that the drafters of the Unclaimed Property Act intended that interest and accretions connected to property be remitted along with the principal property, regardless of the controlling contractual obligation.

Seeking further review in this Court, Appellants challenged the Commonwealth Court's rulings regarding both *nullum tempus* and their liability under the Debt Act. We granted allocatur only as to the second issue. *See Delaware County v. First Union Corp.*, 598 Pa. 545, 958 A.2d 1038 (2008) (*per curiam*).[8]

Appellants open their argument by stating that the present controversy "presents a simple question: Who should gain the benefit of the possession of unclaimed bondholder funds—the Commonwealth or individual local government units?" Brief for Appellants at 15.[9] They contend that the Legislature has answered the question in favor of the Commonwealth by defining "property," for purposes of the Unclaimed Property Act, as subsuming all unclaimed funds, "together with any income, accretions, or profits thereof and thereon," 72 P.S. § 1301.1; *see supra* note 7, and requiring that all such funds be escheated to the Treasurer. Appellants thus argue that, in view of the unclaimed property statute's unambiguous terms, any presumed gains the County might have enjoyed through possession of the funds during the five years in question would have been subject to escheatment, together with the funds themselves. For this reason, they aver that the County did not incur any damages and, accordingly, they were entitled to judgment on the pleadings.

The County responds that Appellants are mistaken in concluding that it would have had to escheat the interest earned on the principal during the five-year period. Echoing the Commonwealth Court majority, the County indicates that the

---

8. Appellants framed the second issue only in terms of whether or not the County would have been required to escheat interest. Thus, no question concerning the implications of Section 1301.14—which relieves a former property holder of "liability with respect to the safekeeping of such property," *see supra* note 6—is before this Court. *See First Union Corp.*, 598 Pa. at 546, 958 A.2d at 1038.

9. In the present case, if any benefit was realized, it was obtained by Appellants, as they placed the monies into non-interest-bearing accounts for several years before escheating them to the state. The above question is relevant to the issue of whether judgment on the pleadings was properly denied, however, as its answer determines whether the County suffered any potential loss by not having use of the funds prior to escheatment.

amounts contractually owed to the bondholders would not have included any interest or earnings had the bondholders lodged a claim during that interval. Therefore, the County argues, the present case does not implicate the portion of the statutory definition of property that subsumes interest and earnings, as that provision merely anticipates the potential transfer of earned income from the Commonwealth back to the rightful property owner in the post-escheatment time-frame. *See* 72 P.S. § 1301.15 ("When property is paid or delivered to the State Treasurer under this article, the owner is entitled to receive income or other increments actually received by the State Treasurer."). The County also empha-sizes that the statutory definition of "property" makes the escheatable amount "subject to all legal demands" on the property in question, 72 P.S. § 1301.1, and proffers that this qualifier pertains, in the present case, to its right to benefit from the income on its deposits while they remain in the hands of the depositories, as well as its right to receive back the deposits, together with interest, two years after the bonds mature.

 The issue presented requires us to construe the Unclaimed Property Act's provision that property subject to escheatment includes interest income (albeit subject to all legal demands on the same), in light of the Debt Act's overall purposes to authorize and limit the indebtedness that local governmental units may incur. As this is an issue of law, our review is de novo and plenary. *See Huntley & Huntley v. Borough Council of Oakmont,* 600 Pa. 207, 221, 964 A.2d 855, 863 (2009).

As noted, Appellants primarily highlight the plain language of the definition of property, and contend that, despite the bondholders' inability to claim interest on overdue bonds, the Legislature has elected to favor the interests of the Common-wealth over those of local government units by clarifying that interest earned on unclaimed bond funds must be turned over to the state once those funds become presumptively aban-doned. Thus, they maintain, even if the bondholders cannot collect the interest, the Commonwealth can do so inasmuch as

its interests prevail over those of the County. While this argument is plausible, its weakness is that it focuses solely on the phrase, "together with any income, accretions, or profits thereof and thereon," and overlooks the words that follow, "and all *other rights* to property." 72 P.S. § 1301.1 (emphasis added). The presence of the word "other" suggests that the preceding list was intended to signify income, accretions, and profits that constitute "rights" associated with the unclaimed property. *See generally O'Rourke v. Commonwealth,* 566 Pa. 161, 173, 778 A.2d 1194, 1201 (2001) ("[W]e should not interpret statutory words in isolation, but must read them with reference to the context in which they appear."); 1 Pa.C.S. § 1903(a) ("Words and phrases shall be construed according to rules of grammar and according to their common and approved usage[.]"). In many instances, the interest earned on unclaimed principal does attach to the principal so that if the principal's owner is determined, that person can claim ownership rights over the interest as well. Indeed, this was the assumption behind the holding in *Lessner,* where the Court stated the general rule that interest follows principal. *See infra* note 10.

In the present circumstances, however, any earnings that the County would have realized on unclaimed bond funds would not have attached to the principal and, hence, would not have given rise to ownership rights associated with those funds, because the bondholders did not own, and were not entitled to collect, such interest no matter how much time elapsed after the bonds matured. For this reason, we find that the County's suggested interpretation is also reasonable. Thus, contrary to Appellants' suggestion, it is not entirely clear from the face of the statute whether the Legislature intended unclaimable interest and other accretions to escheat along with the principal in every case. The statute being ambiguous, *see Trizechahn Gateway LLC v. Titus,* 601 Pa. 637, 653, 976 A.2d 474, 483 (2009) (recognizing that an ambiguity exists when there are at least two reasonable interpretations of the text under review), we must resolve the question with reference to principles of statutory construction. *See*

*Rendell v. Pa. State Ethics Comm'n,* 603 Pa. 292, 303, 983 A.2d 708, 715 (2009). In undertaking this analysis, we may consider the object to be attained by the enactment under review, as well as the consequences of specific interpretations, *see id.* (quoting *O'Rourke,* 566 Pa. at 173, 778 A.2d at 1201), and the manner in which the Legislature would likely have intended the Unclaimed Property Act to interact with the other legislation implicated by the underlying circumstances— here, the Debt Act. *See* 1 Pa.C.S. § 1921(a) (the object of all statutory interpretation is to effectuate legislative intent).

Initially, we address the General Assembly's objective in including interest and other earnings within the scope of property that is subject to escheatment. On this topic, we agree with the County that that provision is evidently de- signed for situations in which the owner of the principal would be entitled to collect the interest earned thereon, a limitation that is reflected in other portions of the statute. *See, e.g.,* 72 P.S. § 1301.3(2) (detailing that funds are presumed abandoned under certain conditions when held by financial institutions, and the monies are escheatable together with "any interest or dividend which the financial institution *would pay to the owner* upon claim therefor" (emphasis added)). In this respect, one legal encyclopedia explains that

> unclaimed property acts are not true escheat statutes ... in that the state does not acquire title to the abandoned property but is merely the custodian of the property, and the owner can reclaim the property at any time. The custodial nature of the Uniform Disposition of Unclaimed Property Act serves to establish that the rights of the state are merely derivative from the rights of the owners of the abandoned property.

30A C.J.S. *Escheat* § 2 (2009); *accord Smolow v. Hafer,* 598 Pa. 561, 571, 959 A.2d 298, 304 (2008) (recognizing that, pursuant to Pennsylvania's Unclaimed Property Act, "aban- doned property is held in perpetual temporary custody of the state"); *State v. Elsinore Shore Assocs.,* 249 N.J.Super. 403, 592 A.2d 604, 606 (1991) (distinguishing "absolute escheat" laws from "custodial escheat" statutes); 6 Summ. Pa. Jur.2d

Property § 12:17 ("The provisions governing the disposition of abandoned and unclaimed property [constitute] a modern custodial type of abandoned property statutory scheme, as opposed to the traditional escheat statute."). Therefore, the definitional language of Section 1301.1, in which interest and other accretions are included in the escheatable amount, must be understood within the context of the legislative objective of giving the Commonwealth custody of the property while seeking ultimately to return it to its rightful owner. Because the bondholder would not have been entitled to collect any income that would have been earned on the funds prior to escheatment, the justification for requiring escheatment of such income is substantially diminished. *See generally Kane v. Ins. Co. of N. Am.*, 38 Pa.Cmwlth. 42, 51, 392 A.2d 325, 329 (1978) (noting that doubts regarding escheatment are resolved against the Commonwealth).[10]

As noted, we also take into consideration the consequences of particular constructions. In this regard, we find Appellants' initial query relevant: whether the state or individual local government units should be permitted to retain the benefit of possessing unclaimed bondholder funds during the pre-escheatment timeframe. For at least two reasons, we conclude that the answer is local governments. First, under a contrary interpretation—the one urged by Appellants—if a bondholder redeemed the bond one day before escheatment, the County would be permitted to keep all income earned on the monies up to the time of payment, but if a claim was lodged against the Commonwealth one day after escheatment,

10. This limitation also distinguishes the present situation from *Lessner*, relied on both by Appellants and Judge Colins in his Commonwealth Court dissent. In *Lessner*, the asset at issue was a certificate of deposit, and it was clear that the certificate's owner would have been entitled to collect the interest earned on the deposited funds; thus, the identity of the interest's owner was viewed as evidence that the same person owned the certificate. In that context, this Court recited the general precept that "interest follows the principal in ownership." *Lessner*, 527 Pa. at 401, 592 A.2d at 682. Here, however, the income produced by unclaimed bond funds does not accrue to the benefit of the bondholder, but is instead available for use by the local government unit. Thus, interest does not necessarily follow principal under the present circumstances.

all such interest would remain in the permanent possession of the state. As there is no reason why the County should be able to retain the interest in the first scenario but not in the second, this result would be illogical. *See* 1 Pa.C.S. § 1922(1) (reciting that the General Assembly is presumed not to intend an absurd or unreasonable result).

Even more importantly, however, we find that the requirement espoused by Appellants would not align well with the general design of the Debt Act. Sinking fund deposits are not structured to be closely associated with the specific bonds that they are ultimately used to satisfy, even while the monies are in the hands of the depositories. Thus, for example, local governments are permitted to create a single sinking fund for the aggregate, or more than one issue or series, of its general obligation bonds and notes, *see* 53 Pa.C.S. § 8221(a)(1), and they are entitled to use interest earned to reduce the amount that needs to be deposited. As the Commonwealth Court observed:

> Sinking Fund deposits are not allocated to particular bonds, but are used to pay all bonds when they become due and owing. Correspondingly, all investment income earned on all the Sinking Fund deposits do[es] not follow any particular bond, but [is] to be used to fund the repayment of all bonds for which the Sinking Fund was created.

*First Union Corp.*, 929 A.2d at 1263. Additionally, once the funds are returned to the County in compliance with Section 8224(f), the Debt Act does not impose any restriction on their use, *accord id.* at 1264, nor does it require the local government to segregate the monies in such a manner that it would be able to ascertain exactly how much interest has been earned on the money that was previously set aside to pay bonds that remained unclaimed more than two years past maturity. Inasmuch as the Debt Act constitutes the exclusive authority for local government units to incur indebtedness, *see* 53 Pa.C.S. § 8001(d), and the authority it gives municipalities to issue bonds and make guaranties or other agreements to provide funds for local capital projects is provided "[n]otwithstanding any other law to the contrary," *id.* § 8005(c), we

believe it would be unduly burdensome under the Debt Act—and inconsistent with legislative intent—to construe the Unclaimed Property Act to, in effect, impose stringent use and accounting requirements on local governments that do not appear in the Debt Act itself.[11]

As for Appellants' query whether the Commonwealth or local government units "should gain the benefit of the possession of unclaimed bondholder funds," Brief for Appellants at 15, the parties have not forwarded any information suggesting that the General Assembly expressly considered a case in which either a local government or the Commonwealth must reap a benefit from the investment of unclaimed bond funds prior to escheatment. As political subdivisions are creatures of the Commonwealth, however, *see City of Phila. v. Schweiker*, 579 Pa. 591, 605, 858 A.2d 75, 84 (2004), we see no reason to suppose that the Legislature would necessarily have favored the latter over the former. More to the point, it is not evident that the legislative body would have sought to confer upon Pennsylvania taxpayers generally a small, diffuse benefit at the expense of the more focused interests of municipal residents whose taxes are ultimately used to pay debt servicing on the bonds (*see supra* note 1). Indeed, it is difficult to see how this would comport with basic notions of fairness or serve the Debt Act's overall purposes to enable, limit, and control municipal borrowing. *See generally Lehigh Valley Coop. Farmers v. Bureau of Employment Sec.*, 498 Pa. 521, 526, 447 A.2d 948, 950 (1982) ("[I]n ascertaining legislative intent, the practical results of a particular interpretation may be considered.").

In light of the above, we conclude that, where a missing property owner lacks ownership rights relative to income earned on that property during the pre-escheatment period, and the local government is otherwise entitled collect such

11. The County argues that these aspects of the Debt Act constitute "legal demands" on the interest income in question which operate to exclude it from the definition of "property" under the Unclaimed Property Act. *See* Brief for Appellee at 8–9. We need not address this specific contention because the issue is capable of resolution through interpretation of the initial part of the definition, as set forth herein.

income and use it for public purposes such as debt servicing, the municipality is not required thereafter to transfer it to the Commonwealth along with the unclaimed property at the expiration of the escheatment period.[12] Accordingly, we agree with the common pleas court and the Commonwealth Court that Appellants were not entitled to judgment on the pleadings.

The order of the Commonwealth Court is affirmed, and the case is remanded for further proceedings consistent with this Opinion.

Former Justice GREENSPAN did not participate in the decision of this case.

Chief Justice CASTILLE, Justices EAKIN, BAER, TODD and McCAFFERY join the opinion.

---

12. This conclusion is consistent with the position maintained by the Treasurer of Pennsylvania. *See generally* 1 Pa.C.S. § 1921(c)(8) (permitting courts to consider administrative interpretations of statutes whose words are not explicit on the issue under consideration).