**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3834-22

KEITH HAWKINS,

     Appellant,

v.

STATE OF NEW JERSEY,
DEPARTMENT OF THE
TREASURY, STATE OF
NEW JERSEY UNCLAIMED
PROPERTY ADMINISTRATION,

     Respondent.

_____

        Submitted November 18, 2024 – Decided April 1, 2025

        Before Judges Gummer and Jacobs.

        On appeal from the New Jersey Department of the Treasury, Unclaimed Property Administration, Claim No. 1000626240.

        Keith Hawkins, appellant pro se.

        Matthew J. Platkin, Attorney General, attorney for respondent (Valerie A. Hamilton, Deputy Attorney General, on the brief).

PER CURIAM

Keith Hawkins appeals from a June 29, 2023 final administrative determination issued by the New Jersey Department of the Treasury, Unclaimed Property Administration (UPA), denying his claim for monetary redemption of Playboy Hotel & Casino gaming chips. Because we conclude UPA's determination was supported by substantial reliable evidence in the record and was not arbitrary, capricious, or unreasonable, we affirm.

I.

Formerly located in Atlantic City, the Elsinore Shore's Playboy Hotel & Casino (Casino) ended operations in 1984. As part of the closure procedure, the Casino transferred funds to UPA earmarked to cover the redemption value of outstanding chips the Casino had issued to patrons while in operation.

On January 18, 2023, nearly forty years after the Casino's closing, claimant delivered 389 chips with a face value of $59,500 to UPA for redemption. On May 5, 2023, claimant submitted a claim form required by UPA to process his request. Claimant certified that he had purchased the chips at an online auction and did not know their source or the former owner's identity. After claimant delivered the chips to UPA, his claim was referred to the New Jersey Division of Gaming Enforcement (Division). The Division referred the

claim to the New Jersey State Police, Financial Crimes South Unit (NJSP) for investigation.

Beginning with claimant, the Division and NJSP proceeded with an investigation. Claimant certified that he had purchased the chips in 2022 from an online seller who had acquired them from an auction of contents of an abandoned bank vault in 2022. Claimant also certified that all other prior owners of the chips were unknown to him.

The NJSP confirmed with the auction house that claimant had made the purchase in question. The NJSP also confirmed that the Casino had not issued the chips. Rather, the Casino hired a company, Green Duck Corporation, to destroy the chips. After contacting a representative of Green Duck directly, the NJSP learned that one of Green Duck's former employees had pilfered several boxes of unused chips "sometime around 1990" and put them in a bank deposit box.[1] However, the NJSP learned from the former employee that he later "declared bankruptcy and forgot about the bank deposit box." The bank where the chips were stored drilled open the box in 2010 and confiscated the chips. In 2022, the bank sent the chips to the auction house from which claimant

---

[1] The former employee's name was redacted from the NJSP report found in the record.

purchased them, as he acknowledged. Based on the illicit origin of the chips, UPA determined the chips had not been issued to patrons in the normal course. UPA denied Hawkins' claim for redemption in a final administrative determination dated June 29, 2023.

Claimant appeals from the final administrative determination. Before this court, he argues that: (1) UPA's denial of his claim was untimely pursuant to statute; (2) UPA relied on insufficient evidence in denying his claim; and (3) UPA's determination was arbitrary and unreasonable.

Regarding timeliness, claimant cites N.J.S.A. 46:30B-78 of the Uniform Unclaimed Property Act, which provides in pertinent part: "The administrator shall consider each claim within 120 days . . . and give written notice to the claimant if the claim is denied in whole or in part." A review of the record shows that claimant delivered the chips to UPA on January 18, 2023. On April 25, 2023, UPA instructed claimant that he was required to complete and submit a claim form and certification for review. Hawkins' claim was finalized on May 5, 2023, upon submission of a completed claim form. The 120-day statutory period of review did not start until then. UPA sent claimant a written notice denying his claim on June 29, 2023, fifty-four days after his claim was

submitted, well within the subject 120-day period.  Thus, claimant's first argument is without merit.

Regarding his second and third points, claimant argues that UPA erred in "making a determination with insufficient evidence offered to prove the truth of the matter."  He characterizes UPA's decision as resting on "scintilla evidence supported by mere uncorroborated hearsay and rumor" from non-credible witnesses.  Claimant also maintains UPA acted arbitrarily when it relied on findings in the police report without independently verifying them.

Claimant also maintains that UPA should not have investigated or exercised discretion based on the results of its investigation.  Rather, "the only condition needed for redemption" is "the article presenting itself."  "Here, the authentic Atlantic City Playboy Hotel and Casino gaming chips [were] presented."

In response, UPA argues that their "final determination is supported by substantial credible evidence" and that claimant failed to satisfy the standard for reversal.  UPA maintains it "was not free to release those funds to a claimant presenting chips that were never issued by the Casino."  Accordingly, because claimant did not present chips issued by the Casino, he was not entitled to the funds.  UPA rejects Hawkins' claim that the only prerequisite for redemption

A-3834-22

was delivery of the Casino chips to UPA. Instead, UPA argues that it "must be holding property for the purpose of paying claims of the kind held by the claimant" and that UPA's determination that the chips were unissued and, therefore, unavailable for redemption was supported by substantial evidence.

UPA addresses Hawkins' claim that the agency improperly relied on "unreliable hearsay" by pointing out that the "New Jersey Rules of Evidence do not apply to administrative matters," citing N.J.S.A. 52:14B-10. UPA also maintains that claimant adduced no evidence to countermand the facts relied on when determining the origin of the chips. UPA concludes by observing that all evidence provided by claimant supports the agency's finding that the chips offered by him were unissued and therefore ineligible for redemption.

II.

The Uniform Unclaimed Property Act was enacted "for the purpose of establishing comprehensive regulation of access to unclaimed property." Haven Sav. Bank v. Zanolini, 416 N.J. Super. 151, 165 (App. Div. 2010) (citation omitted); N.J.S.A. 46:30B-1 to -109. Our Supreme Court has further interpreted the Act's purpose to establish that "title to the unclaimed property does not vest in the State but remains in the owner, as the State only assumes custody of the intangible property until the owner or [their] successors assert a claim that is

6

verified and allowed." Clymer v. Summit Bancorp, 171 N.J. 57, 63 (2002). "[T]he property is placed in the Unclaimed Personal Property Trust Fund and the Treasurer has the discretion to transfer a percentage of those funds to the State Treasury's General Fund." Ibid.

Because redemption of the Casino's chips was the subject of prior litigation, it is a matter of record that upon the closure of the Casino, "the amount of its unredeemed chips and tokens, $446,719 as of July 5, 1990, . . . [was to] be turned over to the custody of the State." State v. Elsinore Shore Assocs., 249 N.J. Super. 403, 408 (App. Div. 1991). Thus, the property and the interest accrued on that sum was to be held by the State as unclaimed property available for redemption pursuant to the Act. Id. at 410. "[W]hen a claim is verified and paid, the Treasurer pays interest for the period during which the monies were in state custody." Clymer, 171 N.J. at 63 (citations omitted). "A person whose claim has been denied by the administrator in whole or in part may appeal the decision to the Appellate Division of the Superior Court of New Jersey." N.J.S.A. 46:30B-84.

### III.

When determining if a particular agency action is arbitrary, capricious, or unreasonable, an appellate court on review must consider:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not have reasonably have been made on a showing of the relevant factors.
>
> [In re Protest of Cont. Award for Project A1150-08, 466 N.J. Super. 244, 258 (App. Div. 2021) (quoting In re Stallworth, 208 N.J. 182, 194 (2011)).]

Notably, the Appellate Division must "defer to an agency's technical expertise, its superior knowledge of its subject matter, and its fact-finding role." Id. at 259 (quoting Futterman v. Bd. of Rev., Dep't of Lab. 421 N.J. Super. 281, 287 (App. Div. 2011)). "Deference is particularly appropriate when the 'agency's expertise and superior knowledge of a particular field' is involved." Ibid. (quoting Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)).

Applying the principles of law to the facts of this case, we conclude that UPA's denial of Hawkins' claim was not arbitrary, unreasonable, or capricious, and was supported by substantial evidence. In making its final agency determination, UPA properly relied on our holding in Elsinore Shore Associates to support the finding that UPA was authorized to redeem only gaming chips that were issued but unredeemed at the time of the Casino closure. 249 N.J.

8

Super. at 408. In that determination, UPA reasonably adopted the findings contained in the report issued by NJSP, detailing its investigation. Based on the evidence available in the record, UPA concluded "that the [c]hips were not issued at the time the Playboy Hotel & Casino closed and rather were among the unissued gaming chips that were supposed to be destroyed by Green Duck Corporation." UPA therefore properly denied Hawkins' claim.

We further note that claimant has adduced no statute, case law or authority to support his claim that the UPA's denial of his claim was arbitrary based on the contention he was entitled to redemption solely by presenting the chips.

In sum, we are satisfied that the evidence in the record supports UPA's conclusion that the chips presented by claimant were "unissued Playboy gaming chips that were to be destroyed" and, therefore, "ineligible for redemption." That determination was supported by substantial reliable evidence in the record and was not arbitrary, capricious, or unreasonable.

To the extent that we have not addressed any arguments raised, they lack sufficient merit to warrant discussion in a written decision. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-3834-22